UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
RAUF DIWAN,                     )
                                )
           Plaintiff,           )
                                )
           v.                   )      Civil Action No. 11-2041 (RWR)
                                )
EMP GLOBAL LLC, et al.          )
                                )
           Defendants.          )
_____ )

MEMORANDUM OPINION

Plaintiff Rauf Diwan filed an amended complaint against defendants Emerging Markets Partnership Global Administration, LLC ("EMPG"), and Emerging Markets Partnership VI, LLC, alleging he was wrongfully terminated as the CEO of Emerging Markets Partnership Bahrain ("EMP Bahrain") in violation of public policy.  The defendants moved to dismiss or to compel Diwan to pursue his claims in arbitration, arguing that Diwan's claim relates to an arbitration agreement governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.  Diwan moved for a preliminary injunction staying the arbitration, and moved under the District of Columbia's Anti-Strategic Lawsuits Against Public Participation Act of 2010 ("anti-SLAPP Act"), D.C. Code § 16-5502, for an order striking or denying the defendants' motion to dismiss or to compel

-2-

arbitration.[1]  (Pl.'s Mem. in Supp. of Mot. for Preliminary

Injunction ("Pl.'s Mem.") at 2.)  Because Diwan did not show

irreparable harm or a likelihood of success on the merits,

Diwan's motion for a preliminary injunction has been denied.[2]

BACKGROUND

Diwan worked as the Managing Director of EMPG's "Second

Asian Fund" from 1997 until 2003, and as the CEO of EMPG's "First

Asian Fund" from 2003 until 2007.  (Am. Compl. ¶¶ 67, 74-75.)  In

March 2007, Diwan resigned from EMPG and was immediately hired as

the CEO of the Asset Management Division of the Atlantic Capital

Group.  (Id. ¶ 79.)  However, in March 2008, Diwan agreed to

---

[1] Under the anti-SLAPP Act, a party may file a special
motion to dismiss any claim arising from an act in furtherance of
the right of advocacy on issues of public interest within 45 days
after service of the claim.  If a party filing a special motion
to dismiss under the anti-SLAPP Act makes a prima facie showing
that the claim arises from an act in furtherance of the right of
advocacy on issues of public interest, then the party's motion to
dismiss under the anti-SLAPP statute should be granted unless the
other party is likely to succeed on the merits.  See D.C. Code
§ 16-5502(b).  Assuming without deciding that the claims asserted
by the defendants in arbitration are covered by the anti-SLAPP
statute, the court denied Diwan's motion under the anti-SLAPP
statute to strike the defendants' motion to compel arbitration
because the defendants are likely to succeed on the merits of
their motion to compel arbitration.

[2] The parties did not present the type of factual disputes
that required a hearing.  A court may deny a plaintiff's
application for a preliminary injunction without first providing
a hearing on the merits when the record demonstrates a lack of
right to relief.  Cornish v. Dudas, 540 F. Supp. 2d 61, 64
(D.D.C. 2008) (citing Smith v. Harvey, Civil Action No. 06-1117
(RWR), 2006 WL2025026, at *2 (D.D.C. July 17, 2006)); Local Civil
Rule 65.1(d) (a court may decide a motion for preliminary
injunction on the papers before holding a hearing)).

return to become the CEO of EMP Bahrain, a subsidiary of EMPG
that is managed and controlled by EMPG.  EMPG owns 60 percent of
EMP Bahrain, paid $350,000 of Diwan's $400,000 annual base
compensation, and, according to Diwan, controls the compensation,
hiring and firing of personnel of EMP Bahrain.  (Am. Compl. ¶¶ 6,
39-41, 47, 51, 96.)

In 2010, Diwan was given profit sharing ("conditional carry
interest" or "carry") in one of the funds managed by EMP Bahrain
-- EMP VI, LLC -- and he signed a "Grant Letter" agreement that,
under Article 4.6 of the EMP VI, LLC Agreement ("LLC Agreement"),
granted him rights as a member of EMP IV, LLC.  The LLC Agreement
required him to arbitrate all disputes "arising under" that
agreement before a panel of arbitrators selected by the
International Chamber of Commerce (the "ICC") under the rules of
the United Nations Commission on International Trade Law
("UNCITRAL").  (See Compl. ¶¶ 1, 28, 35, 178-183; Defs.' Mem. in
Supp. of Mot. to Strike or to Compel ("Defs.' Mem.") at 6-8;
Defs.' Notice of Removal, Ex. B.)  Section 8.12 of the LLC
Agreement provides that "any dispute of the Members, the Manager
or the Company hereunder shall be settled by arbitration."
(Defs.' Notice of Removal, Ex. C.)  That section also provides
that disputes must be "submitted for arbitration to a panel of
arbitrators in New York and resolved by final decision pursuant
to the provisions of the rules of UNCITRAL," that Delaware law

-4-

would be the substantive law governing disputes, and that
arbitration should be concluded within 45 days of its submission,
unless extended for justifiable cause by the arbitrators.
(Defs.' Notice of Removal, Ex. C.)

On November 1, 2010, EMPG issued to Diwan a notice that it
was terminating his employment with EMP Bahrain for cause.  (Am.
Compl. ¶ 171, Ex. E.)  Diwan filed his original complaint in the
Superior Court of the District of Columbia on October 24, 2011,
alleging wrongful termination in violation of public policy and
breach of the LLC Agreement.  The defendants removed the case to
this court in November 2011 under the Federal Arbitration Act
("FAA"), 9 U.S.C. §§ 201-208, and then moved to dismiss or to
stay this case and to compel arbitration.  On November 21, 2011,
the defendants submitted a notice of arbitration to the
International Chamber of Commerce ("ICC").  The ICC International
Court of Arbitration determined that it was "satisfied that an
agreement authorizing it to act as appointing authority may
exist," selected a panel of three arbitrators, and set an initial
scheduling conference for January 4, 2011. (Defs.' Opp'n to
Pl.'s Mot. for Prelim. Injunction, at 13.)  Diwan moved for a
preliminary injunction to stay the beginning of the arbitration.
The motion was denied by minute order and this opinion explains
why.

-5-

DISCUSSION

A preliminary injunction is an "extraordinary" remedy. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  A plaintiff carries the burden of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest. Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).  "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor."  In re: Navy Chaplaincy, 516 F. Supp. 2d 119, 122 (D.D.C. 2007) (citing CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005)); see Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).[3]

---

[3] Two judges on the Davis panel, see id. at 1295-96 (Kavanaugh, J. and Henderson, J., concurring), though, questioned the continuing vitality of, but did not squarely jettison, this sliding scale approach in light of dictum in Winter v. Nat'l Resources Def. Council, Inc., 555 U.S. 7, 20 (2008) (listing the four factors a plaintiff must establish, but neither invoking nor rejecting the sliding scale method).  The most that can be said with any certainty about what Winter decided regarding standards for securing injunctive relief is that a plaintiff must demonstrate that irreparable injury is "likely," not just "possible," 555 U.S. at 22, and that the balance of equities and the public interest were sufficient in that case to weigh against injunctive relief.  555 U.S. at 32; see also Sherley v. Sebelius, 644 F.3d 388, 392-393 (D.C. Cir. 2011) (opinion by Ginsburg, J., joined by Griffith, J.) (stating that "[l]ike our colleagues [in Davis], we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing

I.   IRREPARABLE INJURY

Some showing of irreparable injury "is a threshold requirement for a preliminary injunction."  City of Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C. 2006). "Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair."  Id. (citing Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)).

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

City of Moundridge, 429 F. Supp. 2d at 127-128 (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 367 (D.C. Cir. 1999)).

Diwan claimed that he would be irreparably harmed by paying $74,000 to the arbitration panel, and that allowing arbitration proceedings to begin before determining arbitrability would constitute "per se" irreparable injury.  (Pl.'s Reply at 18.) However, compensable monetary injuries, even if they are substantial, do not constitute irreparable harm.  See Nat'l

_____

requirement for a preliminary injunction'")  .

-7-

Propane Gas Ass'n v. United States Dep't of Homeland Sec., 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (citing Wis. Gas Co., 758 F.2d at 674).  The defendants asserted, and the plaintiff did not dispute, that the $74,000 is merely a deposit, and thus that Diwan may receive a portion of it back.  (Defs.' Opp'n at 23.) "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Bill Barrett Corp. v. U.S. Dep't of Interior, 601 F. Supp. 2d 331, 335 (D.D.C. 2009) (citing Wis. Gas Co., 758 F.2d at 674).

Diwan did not cite any case from this circuit establishing that allowing a matter to proceed to arbitration constitutes irreparable injury.  Instead, Diwan cited PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 515 (3d Cir. 1990), for the proposition that allowing arbitration to continue could constitute irreparable injury.  In PaineWebber, the Third Circuit held that a district court's decision to grant the plaintiff's motion for a preliminary injunction preventing arbitration from occurring was not an abuse of discretion, where the applicable rules governing the arbitration excluded claims more than six years old from arbitration and the claim was indisputably filed more than six years after the last event involving PaineWebber.  Id. at 509-510.

-8-

PaineWebber is not persuasive here for two reasons.  First, the opinion in PaineWebber was predicated on the principle that "a party cannot be required to arbitrate the threshold 'dispute,' as it were, of whether the underlying dispute is itself arbitrable.  Hence, the question of arbitrability . . . is undeniably an issue for judicial determination."  PaineWebber, 921 F.2d at 514.  That principle conflicts with Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002) which held that there are numerous situations where the question of arbitrability is determined by an arbitrator, not a court.  Second, in PaineWebber, the district court determined that compelling a party to attend arbitration could be irreparable injury where the dispute that potentially would be arbitrated is clearly and indisputably outside of the boundaries of the arbitration agreement.  To the contrary, as is discussed below, Diwan was a party to an LLC Agreement that clearly called for arbitration of disputes between the members and the company.  Diwan did not make a sufficient showing of irreparable injury to justify a preliminary injunction.

II.  SUCCESS ON THE MERITS

It is important for one seeking injunctive relief to demonstrate that he is likely to succeed on the merits, in order to justify the "'intrusion into the ordinary processes of administration and judicial review.'"  Konarski v. Donovan, 763

F. Supp. 2d 128, 132 (D.D.C. 2011) (quoting <u>Am. Bankers Ass'n v.</u>
<u>Nat'l Credit Union Admin.</u>, 38 F. Supp. 2d 114, 140 (D.D.C.
1999)).  "Assessing the likelihood of success on the merits 'does
not involve a final determination of the merits, but rather the
exercise of sound judicial discretion on the need for interim
relief.'"  <u>Beattie v. Barnhart</u>, 663 F. Supp. 2d 5, 9 (D.D.C.
2009) (quoting <u>Nat'l Org. for Women v. Dep't of Health and Human</u>
<u>Servs.</u>, 736 F.2d 727, 733 (D.C. Cir. 1984)).

> When considering "a motion to stay proceedings and/or
> compel arbitration, the appropriate standard of review
> for the district court is the same standard used in
> resolving summary judgment motions" pursuant to Federal
> Rule of Civil Procedure 56(a).  <u>Brown v. Dorsey &</u>
> <u>Whitney, LLP</u>, 267 F. Supp. 2d 61, 67 (D.D.C. 2003)
> (internal quotation marks omitted); see also <u>Par-Knit</u>
> <u>Mills, Inc. v. Stockbridge Fabrics Co.</u>, 636 F.2d 51, 54
> & n.9 (3d Cir. 1980).  Thus, it is appropriate to grant
> a motion to stay proceedings when the pleadings and the
> evidence demonstrate that "there is no genuine dispute
> as to any material fact and the movant is entitled to
> judgment as a matter of law."  Fed. R. Civ. P. 56(a).
> The party seeking summary judgment (i.e., arbitration)
> bears the initial responsibility of demonstrating the
> absence of a genuine dispute of material fact.  <u>See</u>
> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

<u>Sheet Metal Workers' Int'l Ass'n v. United Transp. Union</u>, 767 F.
Supp. 2d 161, 167 (D.D.C. 2011).

Once it has been determined that an arbitration agreement is
valid - - i.e. that the parties have a contract that provides for
arbitration of some issues between them - - all doubts regarding
the scope of the arbitration clause are resolved in favor of
arbitration.  "In determining the scope of arbitability, there is

-10-

a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." Granite Rock Co. v. Int'l Brotherhood of Teamsters, 130 S. Ct. 2847, 2866 (2010) (Sotomayor, J., concurring/dissenting) (quoting AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650 (1986)); see also Wolff v. Westwood Management, LLC, 558 F.3d 517, 520 (D.C. Cir. 2009)("the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.")(quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

    Here, the arbitration provision of the LLC Agreement appears to provide that the questions of arbitrability should be resolved by the arbitrators.  The LLC Agreement clearly provides that arbitration disputes would be subject to the rules of UNCITRAL.

-11-

The Article 23 of UNCITRAL in effect in November 2010[4], when the

dispute became arbitrable, provided that:

> The arbitral tribunal shall have the power to rule on
> its own jurisdiction, including any objections with
> respect to the existence or validity of the arbitration
> agreement.  For that purpose, an arbitration clause
> that forms part of a contract shall be treated as an
> agreement independent of the other terms of the
> contract.  A decision by the arbitral tribunal that the
> contract is null shall not entail automatically the
> invalidity of the arbitration clause.

UNCITRAL Arbitration Rules, Art. 23,¶ 1, G.A Res. 65/22 (Dec. 6,

2010); see also Republic of Argentina v. BG Group PLC, No. 11-

7021, 2012 WL 119558, at *6 (D.C. Cir. Jan. 17, 2012) (stating

that the 1976 version of the UNCITRAL arbitration rules "grant

the arbitrator the power to determine issues of arbitrability").

At least one court has held that substantially similar language

in an arbitration agreement reserved the issue of arbitrability

for the arbitrators.  See Contec Corp. v. Remote Solution Co.,

Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (holding that language

stating that "[t]he arbitrator shall have the power to rule on

his or her own jurisdiction, including any objections with

respect to the existence, scope or validity of the arbitration

agreement" reserved the question of arbitrability for the

---

[4] While Diwan argued that an earlier version of the rules of
UNCITRAL should be applied, the provision of the LLC Agreement at
issue states that arbitration would be resolved "pursuant to the
rules of UNCITRAL" (Defs.' Notice of Removal, Ex. C), not
pursuant to the rules of UNCITRAL as they existed on the date
Diwan signed the LLC Agreement.

arbitrator).  While Diwan argued that the language found in

UNCITRAL's Article 23 is distinguishable because it does not

include the word "scope," Diwan cited no authority holding that

the absence of the word "scope" implies that questions of

arbitrability should not be resolved by arbitrators where an

agreement provides that the arbitrator has the power to rule on

his or her own jurisdiction or the validity of applying the

arbitration agreement to the dispute at issue.  Diwan argued that

he should not be bound by the arbitration provision of the LLC

Agreement because the agreement is "unconscionable," because he

did not read the LLC Agreement, and because he claims the

defendants engaged in a material misrepresentation by failing to

inform him that signing the grant letter made him a member of the

EMP VI, LLC that was bound by the LLC Agreement.  However, the

grant letter clearly states that Diwan was becoming a member of

the LLC, bound by the LLC Agreement:

> Pursuant to Article 4.6 of that certain Emerging
> Markets Partnership VI L.L.C. Limited Liability Company
> Agreement, dated February 14, 2005, as amended (the
> "Agreement"), EMP Global LLC, as Manager, hereby
> consents to your admission as a new Member of Emerging
> Markets Partnership VI, L.L.C. (The "Company") and the
> granting of a 0.573% interest in the Company's Class B
> Interests.

(Defs.' Notice of Removal, Ex. B.)  Furthermore, Diwan accepted

benefits under that Agreement as a member of EMP VI, LLC, and any

assertion that he was unaware of that Agreement's contents seems

inconsistent with his claim in his initial complaint that his

-13-

"contractual relationship with EMP VI governed and controlled
many aspects of his job, including the process for, and his
rights regarding, termination." (Compl. ¶ 36.)  In addition, the
defendants pointed out that under the law governing the LLC
Agreement, "[a] member . . . of a limited liability company . . .
is bound by the limited liability company agreement whether or
not the member . . . executes the limited liability company
agreement." Del. Code Ann. § 18-101(7).  Diwan did not show that
he was likely to succeed on the merits.

III. BALANCE OF EQUITIES; PUBLIC INTEREST

    Because Diwan sought injunctive relief, he also had to
demonstrate that the balance of the equities tipped in his favor
and that the public interest favored granting injunctive relief.
See Beattie v. Barnhart, 663 F. Supp. 2d 5, 9 (D.D.C. 2009).
Diwan argued that the balance of the equities tilted in his favor
because the defendants waited approximately one year to initiate
the arbitration proceedings.  He also argued that the public
interest would be furthered by enjoining the arbitration because
his employment was allegedly terminated for refusing to violate
the Foreign Corrupt Practices Act, and litigating that claim in a
court would be more likely to result in an "open, fair, and
transparent" resolution. (Pl.'s Mem. at 20-21.)  However, the
defendants countered that if they were enjoined from arbitrating
they could lose the ability to raise their claims in arbitration,

-14-

and that the public interest would be furthered by letting this
case proceed to arbitration because doing so would enhance the
certainty of arbitration agreements in international contracts.
(Defs.' Opp'n at 24-25.)  While both parties' arguments had some
merit, none was compelling enough to tip these factors in favor
of one party or the other.

CONCLUSION

Because Diwan did not show that he is likely to suffer
irreparable harm or that he is likely to succeed on the merits,
his motion [14] for a preliminary injunction and for an order
denying the defendants' motion to compel arbitration has been
denied.

SIGNED this 27th day of January, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge